HENRY v. KIRBY LUMBER CO.
(No. 83—9523.)

(Commission of Appeals of Texas, Section A, Nov. 5, 1919.)

1. MASTER AND SERVANT ⬤══289(32)—RIDING ON LOCOMOTIVE NOT NEGLIGENCE AS MATTER OF LAW.

Lumber company's employé, invited to ride on a logging train after finishing his work, who sat on the tender of the locomotive while seeing signals to couple cars loaded with logs, a log on the car coupled to the tender, longer than the car, being pushed against him, *held* not negligent as a matter of law.

2. MASTER AND SERVANT ⬤══289(1)—CONTRIBUTORY NEGLIGENCE A JURY QUESTION.

Contributory negligence is a question of fact to be found by the jury, in a servant's action for injury.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by John Henry against the Kirby Lumber Company. From judgment for plaintiff, defendant appealed to the Court of Civil Appeals, which reversed and rendered judgment for defendant (178 S. W. 23), and plaintiff brings error. Judgment of the Court of Civil Appeals reversed, and that of the trial court affirmed, on recommendation of the Commission of Appeals.

V. A. Collins, D. E. O'Fiel, and F. G. Vaughn, all of Beaumont, for plaintiff in error.

Andrews, Streetman, Burns & Logue, of Houston, for defendant in error.

STRONG, J. The plaintiff, John Henry, brought this suit against the Kirby Lumber Company to recover damages for personal injuries alleged to have been suffered through the negligence of said company. The defendant answered by general denial, and pleaded contributory negligence and assumed risk.

The facts attending the accident causing plaintiff's injury are, in substance, as follows:

The defendant is a corporation engaged in the manufacture and sale of lumber. For the purpose of bringing timber from the forest to the mill, it owns and operates steam engines and log cars which are propelled over a tramroad. Plaintiff was employed by. the defendant to assist in clearing off the right of way for the extension of the tramroad. His work was some distance from the mill, and he and other employés engaged in like work were carried back and forth on defendant's log train. On the day of his injury, plaintiff completed the work assigned to him about noon, and was told by his foreman "to go and catch the train and go in," He went over to where the engine was standing on the tramroad, and was told by the engineer that if he was going in with them to help "wood up." There were no cars attached to the engine at this time. After the tender of the engine had been filled with wood, plaintiff boarded the engine, taking a seat on the front of the tender. The engine was then backed down to a switch to get a load of logs to carry in to the mill. After the first car of logs was coupled to the tender of the engine, the engineer, in an effort to couple a second car, backed with such force against the second car that it pushed a projecting log on the first car back against the end of the tender of the engine where plaintiff was sitting, and caught his leg between the tender and the end of the log, thus causing the injuries complained of. The plaintiff testified in regard to the accident and in explanation of his position on the tender of the engine as follows:

"The engineer saw me when I got on the train—on the tender of the engine. I had been riding on the same place where I got hurt all the time I had been working there when I was going to and coming from the woods. I had never ridden on any other part of the engine, except that place where I got hurt when I was going to the woods. They would bring me in from the woods on a light shay engine. In going out I always rode on this same place, and they always had the same crew, the same engineer and fireman all the time. When I took my seat on the tender the engineer and fireman were right there, and saw me when I took my seat—they were standing right there. When they got to the loaded cars the brakeman came around behind and stood on the apron with me—he was on the fireman's side flagging it on, and he rode on down there with me, but he didn't speak to me. When we got to them he coupled the train up. I was about as close to the first carload of logs as the length of this table (about three feet) and I could see them all right, and the ends of the logs were smooth and shapely and in good order. I could not see the other end of the car, because the logs were stacked too high. Nobody ever told me

to get down off the tender. They told me to get on there, and nobody every told me to get off. When the brakeman coupled up that car he never told me to get off. He was as close to me as that man is there (about three feet). * * * I did not know that the train was going to back up and make another coupling; I thought it was going to stand still. I never saw a train made up that way. I have always seen them made up and be coupled together. The switch engine would make up the train, and when the engine would go out after them the train would be made up, and there wouldn't be but one coupling to make. And when we made that one coupling I thought the train was ready to go in; didn't know they was going to shove back and make another coupling. I never did see but two engines at Evadale, and couldn't tell whether they made up the train with the switch engine in the woods or not—I never worked close enough to see—but at Silsbee they always kept an engine out in the woods to make up the train, and the engine that hauled the logs never had anything to do with making up the train."

The jury found, in answer to special issues submitted, that at the time of his injury, plaintiff was on the tender of the engine by permission of the employés of defendant in charge of the engine, and that said employés were guilty of negligence in causing said engine and car of logs to back against the second car of logs in the manner and under the circumstances stated. These findings are supported by the evidence. The jury further found that plaintiff was not guilty of contributory negligence in taking and remaining in the position in which he was at the time he was injured. Upon these findings the trial court rendered judgment for plaintiff, assessing his damages in accordance with the verdict of the jury. Upon appeal, the Court of Civil Appeals reversed the judgment of the trial court, and rendered judgment for defendant in error, holding that the plaintiff in taking the position which he occupied on the tender of the engine at the time he was injured was guilty of contributory negligence as a matter of law. 178 S. W. 23.

[1] We think, in view of the plaintiff's testimony, to the effect that in riding on the tender of the engine he was following a custom known to and acquiesced in by those in charge of the train, that the Court of Civil Appeals erred in holding that he was guilty of contributory negligence, as a matter of law. Mr. Labatt, in his excellent work on Master and Servant (vol. 3, § 1269), in discussing the effect of such testimony says:

"A circumstance frequently adverted to as one which tends to negative the inference that the servant was guilty of contributory negligence is that the course of action which he was pursuing at the time the injury was received was the one customarily followed by himself or his coemployés under similar circumstances, with the approval or tacit acquiescence of the master or his representative. How far this circumstance is actually a differentiating factor, serving to fix the line of demarcation between evidence which does and which does not warrant a court in saying, as a matter of law, that the action is not maintainable, is a question to which the cases supply no definite answer. The only doctrine which it seems possible to formulate upon the subject is the somewhat vague one that, unless what the servant did was necessarily and inevitably so dangerous that it is impossible to concede that any prudent man would have acted in such a manner, evidence showing that he complied with a custom, known to and expressly or impliedly sanctioned by his employer, will generally turn the scale in his favor, and secure for him the privilege of having the quality of his conduct determined by the jury, although he would otherwise have been declared incapable of recovering."

[2] Applying the rule thus stated to the facts of this case, it cannot, we think, be held as a matter of law that the danger of riding on the tender of the engine was so obvious that no prudent person would undertake it. Plaintiff and his coemployés had occupied the same position in perfect safety many times before in going to and returning from their work. If plaintiff's testimony is true—and that was a matter for the jury to determine—he did not know that the coupling which caused his injury was to be made. He was under the impression that the train had already been made up, and that the only coupling to be made was that of the engine to the first car of logs. Those in charge of the train knew of plaintiff's presence on the tender of the engine, and evidently did not regard his position as extrahazardous, or they would have given him some warning as to the danger. We do not think it can be said, under these circumstances, that reasonable minds might not reach different conclusions as to whether or not a man of ordinary prudence might believe that he could occupy the position occupied by plaintiff with safety to himself. Many authorities are cited in the opinion of the Court of Civil Appeals, where, under the circumstances peculiar to those cases, it was held that the plaintiff was guilty of contributory negligence as a matter of law; but we think the facts of the cases cited clearly distinguish them from the case at bar. The general rule is that contributory negligence is a question of fact to be found by the jury, and, in our opinion, the facts in this case do not take it out of that rule.

We have examined the other assignments in the brief of defendant in error, which, on account of the disposition made of the case by the Court of Civil Appeals, were not considered by that court, and believe no error is shown by any of them.

We are of opinion that the judgment of the Court of Civil Appeals should be reversed, and that of the trial court affirmed.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.